STEPHEN HOAR AND ELIZABETH HOAR, HIS WIFE, *v.* HENRY WARD AND BRIDGET WARD, HIS WIFE.

*Slander.*

The words alleged were the calling of plaintiffs' children *bastards*. *Innuendo*, "meaning to insinuate and be understood that said children were illegitimate, and not born in lawful wedlock, and that the said Elizabeth [the plaintiff wife] had been unfaithful to her husband, and had not observed and kept her marriage covenants, but had been guilty of lewd and unchaste conduct, and had committed *a crime* under the statutes of this state." There was no prefatory averment of any intent to charge any *particular* crime. *Held*, that the averments did not impute crime with sufficient certainty, and that the words alleged were not, therefore, actionable *per se.*

Words charging one with being a bastard are not actionable *per se.*

Where the declaration contains allegations of different slanders at different times, a general allegation of special damage, "by means of the committing of which said several grievances," is not sufficient. It must be averred from what particular wrongful act the special damage is claimed to have resulted.

SLANDER.   The declaration alleged,

" That the said Elizabeth, at the time of the committing of the grievances hereinafter mentioned, was and still is a married woman,

83

the wife of Stephen Hoar, with whom she is still living; that as the fruits of said marriage, she is the mother of seven children, to wit, Michael N., John F., Richard, Mary F., Elizabeth E., Catherine L., and Stephen J. Hoar, the oldest of which is but eleven years; that she is a good, true, honest, just, and faithful subject of this state, and as such hath always behaved and conducted herself, and until the committing of the several grievances by the said Bridget as hereinafter mentioned, was always reputed and esteemed and accepted by and amongst all her neighbors, and other good and worthy citizens of this state to whom she was in any wise known, to be a person of good name, fame, and credit, and had never been guilty, nor until the time of the committing of the said several grievances by the said Bridget as hereinafter mentioned, been suspected to have been guilty, of the offences and misconduct as hereinafter stated to have been charged upon and imputed to her. By means of which said premises, &c. Yet the said Bridget, well knowing the premises, but greatly envying the happy state and condition of the said Elizabeth, and contriving and wickedly and maliciously intending to injure the said Elizabeth, and to bring her into public scandal, infamy, and disgrace with and amongst all her neighbors and other good and worthy citizens of this state, and to be despised, scorned, and disregarded by her said children, and to cause it to be suspected and believed by those neighbors, citizens, and children, that the said Elizabeth had been and was guilty of the offences and misconduct hereinafter stated to have been charged upon and imputed to her the said Elizabeth by the said Bridget, and vex, harrass, oppress, impoverish, and wholly ruin the said Elizabeth, and to cause it to be believed that the said Elizabeth had been unfaithful to her husband, and had not kept her marriage covenants and vows, and had been guilty of committing an offence under the statutes of this state, and had given birth to illegitimate children, heretofore, to wit, on the the 17th day of August, A. D. 1873, at Barnard aforesaid, in a certain discourse which she the said Bridget then and there had with the above-named children of the said Elizabeth, in the presence and hearing, &c., of and concerning the said Elizabeth, and of and concerning the children of the said Elizabeth, falsely and maliciously spoke and published in the presence and hearing of said last-mentioned children and citizens, of and concerning the said Elizabeth in her relation of wife and mother, and of and concerning her aforesaid children, the false, scandalous, malicious, and defamatory words, following, that is to say : ' You (meaning the children of the said Elizabeth) are bastards.' (Meaning to insinuate and be understood that said children

were illegitimate, and not born in lawful wedlock, and that the said Elizabeth had been unfaithful to her husband, and had not observed and kept her marriage covenants, but had been guilty of lewd and unchaste conduct, and committed an offence under the statutes of this state.")

The declaration further alleged, that on the 23d of said August, said Bridget, continuing her malice, spoke and uttered to one John Hoar, son of said Elizabeth, of and concerning the said Elizabeth, and of and concerning her children, these other false, &c., words : " You (meaning the said John Hoar) are a bastard, (meaning that the said John was born an illegitimate child), and your (meaning the said John's) mother (meaning the said Elizabeth, mother of said John) is a bastard. (Meaning to insinuate and be understood that the said Elizabeth was not born in lawful wedlock, but was illegitimate)" ; also, that on the 25th of said August, the said Bridget, continuing her malice, did speak and publish to the said Elizabeth, and to and in the presence of divers of her children, and other persons, of and concerning the . said Elizabeth, and of and concerning her as a married woman, and of and concerning her children born while she the said Elizabeth was married and living with her husband, these words : " I (meaning the said Bridget) will knock your (meaning the children of the said Elizabeth) brains out, you (meaning the children of the said Elizabeth) bastards. Come out here yourself (meaning the said Elizabeth), but don't send your (meaning the said Elizabeth's) bastards out. They (meaning the said Elizabeth's children) are all bastards, and she (meaning the said Bridget) could prove it." (Meaning to insinuate and be understood that the said Elizabeth had led a life of unchastity ; that said children were spurious offspring, begotten outside of lawful wedlock, and were illegitimate ; and that the said Elizabeth had been guilty of committing a crime under the statutes of this state.)

" By means of the committing of which said several grievances by the said Bridget as aforesaid, the said Elizabeth hath been and is greatly injured in her said good name, fame, and credit, and brought into public scandal, infamy, and disgrace, with and amongst all her neighbors, children, and other good and worthy subjects of this state, insomuch that divers of those neighbors and

citizens to whom the innocence and integrity of the said Elizabeth in the premises were unknown, on account of the committing of the said grievances by the said Bridget as aforesaid, from thence hitherto, suspected and believed, and still do suspect and believe, the said Elizabeth to have been and to be a person guilty of the offences and misconduct so as aforesaid charged and imputed to her by the said Bridget, and have by reason of the committing of the said grievances by the said Bridget as aforesaid, from thence hitherto wholly refused, and still do refuse, to have any transaction, acqaintance, or discourse, with the said Elizabeth, as they were before used and accustomed to have and otherwise would have had; and also by means of the premises, the said Elizabeth hath lost the confidence, respect, and esteem of her children, and suffered loss of character, loss of hospitality among friends, loss of peace of mind, and health, and been deprived of much sound sleep, and subjected to great distress in feeling, loss of time, and is otherwise greatly injured and damnified."

Demurrer to the declaration, for that the words alleged in the different counts thereof, did not charge or impute to the plaintiff, Elizabeth, the commission of any crimes punishable by law, and were not actionable in the manner and form as alleged; that the words alleged in the first and second counts, did not sustain the allegation in the innuendo that said Bridget intended to charge the said plaintiff, Elizabeth, with unfaithfulness to her husband, and the commission of a crime under the statute of this state; that there was no colloquium alleged in either of the counts, showing the meaning in which the words alleged to have been spoken were used, or intended to be understood; and that the words alleged in the different counts, as apparent upon the face of the declaration, were spoken in anger and the heat of passion, and were not, therefore, actionable.

The court, at the May term, 1874, BARRETT, J., presiding, sustained the demurrer, *pro forma*, and adjudged the declaration insufficient, and rendered judgment for the defendants; to which the plaintiffs excepted.

*Norman Paul* and *J. J. Wilson*, for the plaintiffs.

The demurrer admits the truth of the allegations charged, and is to the whole declaration. The declaration recites words

spoken at three different times, each of which, in the manner they are alleged, are sufficient in law for the plaintiffs to maintain their action ; but in the event that only one count should be held good, the plaintiffs are entitled to judgment. 1 Chit. Pl. 664 ; Townshend Slander, 564 ; *Seddon* v. *Senate,* 13 East, 63, 76 ; *Kingsley* v. *Bill,* 9 Mass. 199 ; *Hale* v. *Omaha National Bank,* 49 N. Y. 626. The rules of pleading in actions for slanderous words, have been somewhat modified in this state since the decision in *Hoyt* v. *Smith,* 32 Vt. 304, where it is held "that it is proper to include in a single count words spoken at different times and to different persons, if they relate to the same subject."

Words which are spoken of another, upon which an action of slander is predicted, should be construed according to the common and ordinary meaning given to them. If it is claimed that when they were spoken, any particular meaning was intended or understood to be given to the slanderous words, such fact is a proper subject for the consideration of the jury, and can only be shown by the evidence offered at the trial. It cannot be presumed on hearing on demurrer to the declaration. *Smith* v. *Miles,* 15 Vt. 245 ; *Symonds* v. *Carter,* 32 N. H. 458 ; *Chaddock* v. *Briggs,* 13 Mass. 248 ; *Sanderson* v. *Caldwell,* 45 N. Y. 398 ; *Roberts* v. *Camden,* 9 East, 93. The declaration alleges that the slanderous words were spoken of the plaintiff, Elizabeth, as a married woman and mother, and are actionable. The term *bastard,* is defined in the books to mean *illegitimate, spurious, one begotten and born out of wedlock.* It has been a recognized principle of law from a very early period, that words spoken of a person as an individual, may not be actionable ; yet the same words spoken of one in an official capacity, become so. Words spoken of a married woman, reflecting on her fidelity and virtue as such, and the legitimacy of her children born in lawful wedlock, are much more injurious than words can be that refer simply to the official relations one may chance to sustain among his fellows. *Billings* v. *Wing,* 7 Vt. 439 ; *Redway* v. *Gray,* 31 Vt. 292 ; *Underhill* v. *Welton,* 32 Vt. 40 ; *Symonds* v. *Carter, supra ; Chaddock* v. *Briggs, supra ; Walker* v. *Winn,* 8 Mass. 248 ; *Harding* v. *Brooks,* 5 Pick. 244 ; *Miller* v. *Parish,* 8 Pick. 383 ;

*Brown and wife* v *Nickerson*, 5 Gray, 1 ; *Frisbie* v. *Fowler*, 2 Conn. 707 ; *Fowles* v. *Bowen*, 30 N. Y. 20 ; *Vaughan* v. *Ellis*, Cro. Jac. 213.

The declaration contains all the necessary averments. It sets forth that a certain discourse was had by the defendant, Bridget, of and concerning the plaintiff, Elizabeth, while she was a married woman, and refers the slander directly to her in that capacity, and charges it specifically. This is the use of a *colloquium*, and in the case at bar it is amply sufficient. *Nichols* v. *Packard*, 16 Vt. 83 ; *Murray* v. *McAllister*, 38 Vt. 167 ; *Miller* v. *Parish*, *supra*.

The allegations that the defendant Bridget intended to charge the plaintiff Elizabeth with unfaithfulness to her husband, and that she had committed a crime under the statutes of this state, are fully warranted by the language used. A person may be as much slandered by the use of insinuating remarks and language, as by a direct charge. *Randall* v. *Butler*, 7 Barb. 260 ; *Gibson* v. *Williams*, 4 Wend 320 ; *Nye* v. *Winn*, *supra*.

The fourth objection made by the demurrer, is a proper subject to be considered upon the evidence ; it does not appear from the papers themselves. *Smith* v. *Miles*, *supra*.

The declaration should be sustained, even though the court should be of the opinion that the alleged slanderous words are not actionable ; as it contains an allegation of special damage, which makes all language actionable, if the charges are sustained by the proof. *Underhill* v. *Welton*, *supra ; Bradt* v. *Towsley*, 13 Wend 252 ; *Moore* v. *Meagher*, 1 Taunt. 39 ; *Redway* v. *Gray*, *supra*.

*W. C. French*, for the defendants.

Each count being for a separate course of action, must contain all the allegations necessary to sustain it, and cannot be aided by the allegations in the other counts. *Holton* v. *Muzzy*, 30 Vt. 365 ; Townsend Slander, 507. In the first and third counts, the charge is that the children of the plaintiffs are bastards. This slander is against the children, and not against their mother. There is no inducement or colloquium, showing that the mother

was intended to be slandered. These counts must be clearly bad. Townsend Slander, 164, note, 504, 505, 516 ; *Maxwell* v. *Allison*, 11 S. & R. 343. The words alleged to have been spoken in these two counts, do not in any sense sustain the innuendo in each count. The innuendo cannot enlarge the sense or meaning of the words. Townsend Slander, 181, note, 528 *et seq ; Fitzsimmons* v. *Cutler*, 1 Aik. 33 ; *Ryan and wife* v. *Madden*, 12 Vt. 51 ; *Wood* v. *Scott*, 13 Vt. 42 ; *Sanderson* v. *Hubbard*, 14 Vt. 462 ; *Nichols* v. *Packard*, 16 Vt. 83 ; *Holton* v. *Muzzy, supra ; Tyler* v. *Tillotson*, 2 Hill, 507 ; *Muller* v. *Maxwell*, 16 Wend. 9 ; *Snell* v. *Snow*, 13 Met. 278 ; *Edgerly* v. *Swain*, 32 N. H. 472. It is not alleged, nor can it be inferred, what crime against a statute of this state, is alluded to in the innuendo to these counts. The charge in the second count, that the plaintiff is a " bastard," is not actionable *per se ;* and to make it actionable, special damage must be alleged and proved. Townsend Slander, 214, 233, 339, 340 ; *Billings* v. *Wing*, 7 Vt. 439 ; *Underhill* v. *Welton*, 32 Vt. 40. There is no allegation of special damage in this count. The allegations of special damage in the third, cannot aid this count. *Holton* v. *Muzzy, supra.*

The gist of the action of slander, is the pecuniary loss which the plaintiff has suffered by reason of the speaking of the words. Townsend Slander, 103, and note, 109, n. 2, 115 ; *Underhill* v. *Welton, supra.* In words not actionable *per se*, the plaintiff must particularly set forth the special damage sustained. 1 Saund. 243, n. 5 ; *Woodbury* v. *Thompson*, 3 N. H. 194. The special damage must be the loss of some " material, temporal advantage." Loss of reputation, peace of mind, society of neighbors, &c., is not sufficient. Townsend Slander, 293, and note, 298 ; *Beach* v. *Ranney*, 2 Hill, 309. The only allegation in the declaration which can be regarded as special damage, is that of " loss of time," and this is too general to be good on demurrer. *Underhill* v. *Welton, supra ; Bradt* v. *Towsley*, 13 Wend. 253. If this allegation was well alleged, and could apply to all the counts, it would still be bad, as it would be a result following from all the words alleged to have been spoken by the defendant. The special damage must result wholly from the words applicable to the plain-

tiff in the third count. Townsend Slander, 298. Language is to be construed with reference to the cause, occasion, and circumstance of its publication. In this case it is clear that the defendant Bridget used the term " bastard," as a term of reproach, and nothing more, in her anger, without attaching any particular meaning to it. Townsend Slander, 166.

This action cannot be maintained in the name of the husband and wife. In all cases of slander of a married woman where the words are not actionable *per se*, the husband must sue alone. Townsend Slander, 499, § 301; 1 Chit. Pl. 84 ; *Beach* v. *Ranney*, *supra ;* Stark. Slander, 151, 157 ; *Williams and wife* v. *Holden*, 22 Barb. 396 ; *Lewis and wife* v. *Babcock*, 18 Johns. 443 ; *Saville and wife* v. *Sweeney*, 4 B. &. Ad. 514.

The opinion of the court was delivered by

REDFIELD, J. This action is slander for words spoken. The declaration is in one count, charging *three* offences. The defendants file a general demurrer to the declaration, alleging four special causes. The sufficiency of the declaration is the matter submitted. The declaration contains certain prefatory averments, that said Elizabeth, at the time of the alleged slander, was a married woman, and the wife of Stephen Hoar ; that as the fruits of said marriage, she is the mother of seven children, and had ever conducted herself as an honest wife.; that the defendant, Bridget, maliciously intending to cause her to be suspected of the offences hereinafter imputed to her, &c., and to cause it to be suspected and believed that she had not kept her marriage vows, and had been guilty of committing an offence under the statutes of this state, and had given birth to illegitimate children, in a certain discourse of and concerning the said Elizabeth in her *relations of wife and mother*, and of and concerning the children aforesaid, said : " You (meaning the said children) are *bastards*." Meaning to insinuate that said children were *illegitimate*—that said Elizabeth had been *unfaithful* to her husband—had been guilty of lewd and unchaste conduct, and committed *an offence under the statutes of this state.*

*2d Count.* That said Bridget, on another occasion, spoke to John Hoar, and said of said Elizabeth, these false and scandalous words : " You are a *bastard,* and your mother is a bastard." (Meaning to *insinuate* that said *Elizabeth* was not born in lawful wedlock, but was illegitimate.) This count imputes no blame to Elizabeth, but that her *parents* may have sinned.

*3d Count.* That said Bridget, continuing her malice, on another occasion, speaking of and concerning said Elizabeth and her children born while said Elizabeth was married and living with her husband, said in the presence of said Elizabeth and said children : " They (meaning the children) are all bastards, and *she* (meaning Bridget, the speaker) could prove it." Meaning that said Elizabeth had led a life of unchastity—that said children were a *spurious* offspring, and *illegitimate,* and that said Elizabeth had been guilty of committing *a crime* under the statutes of this state. By means of the premises the plaintiff has suffered anguish, loss of sleep, loss of hospitality among friends, loss of peace of mind, and health, distress of feeling, loss of time, &c.

I. There is no prefatory averment that Bridget purposed or intended to have Elizabeth suspected of any *particular crime,* but only of *a crime* under the statutes of this state. The words complained of are, that the children of Elizabeth are *bastards.* The *inuendo,* meaning to insinuate that Elizabeth is unfaithful to her husband, lewd, unchaste, and has been guilty of *a crime* under the statutes of this state. But the pleader does not state *what crime.* It is most probable, so far as the court have knowledge of the laws of propagation, that if a married woman bears bastard children, they are begotten in an *adulterous commerce ;* and if so, it would be a *crime ;* but the pleader has no such averment in this declaration. The court have less knowledge of the laws of *maternity* than many unjudicial modern reformers ; but they are supposed to have some knowledge of the criminal laws of the state. It is not their province to search and sift, and group together from the different parts of the declaration, facts and circumstances, and adjudge whether a definite crime may be fairly *deduced.* It is the office and duty of the pleader to aver

84

clearly and *distinctly*, in the *colloquium* and prefatory averments, the crime intended to be imputed to the plaintiff, and in the *inuendo*, the crime pointed at and insinuated; and then it will be for the court to adjudge whether the charge is warranted by the words spoken; and if so, the words are *actionable per se.*

We do not think that the averments impute crime to the plaintiff with sufficient certainty; facts are stated merely, from which a jury might *infer crime.* The words spoken are not therefore, in themselves, actionable.

II. The words imputing the want of chastity, and lewd conduct, to the plaintiff, become actionable by the averment of *special damage.* Such damage must be *pecuniary;* vexation and anguish of mind, suffering and loss of sleep, are not sufficient. The averments of damage in this case are general, and not pecuniary in character, but among them is the *"loss of time,"* and it has been said by a wise man that "time is money"; but time is not necessarily of pecuniary value; with the confirmed invalid it *may be* but pain and *expense.* It is certainly more consonent with the rules of pleading, that where the law requires the averment of *special* damages, the pleader should state some *pecuniary loss.* But it was held by this court in *Underhill* v. *Welton,* 32 Vt. 40, that an averment of *special damages*, not unlike this in form, after verdict, was sufficient. But if we should hold this declaration to have a sufficient averment of *special damages* on general demurrer, there is nothing in such averment referring the damage averred to any or either of the injuries alleged. If all the grounds of complaint were for uttering the same slander at different times, this difficulty would be less formidable.

But the second averment of slander is the charging the plaintiff Elizabeth with being a *bastard;* not that she was unchaste, but that her parents were; and there is not a single reference in any prefatory averment to any such intended injury. It stands on the single naked averment that Bridget called her a bastard, intending to *insinuate* that she was *illegitimate.* This charge, as a ground of action, cannot be sustained. It is altogether a matter of conjecture, whether the special damages, if any is alleged, is

referred to this or some other offence. In *Hilton* v. *Muzzy*, 30 Vt. 374, the court, BARRETT, J., say : "It is a familiar rule, that the special damages claimed, must be averred as resulting from the particular wrongful act from which they flow." In that case as in this, the averment was, "from the premises," without designating what particular damage resulted from the different classes of words charged in the declaration.

It is a matter of regret that this declaration, as a form, should have been revived, especially after the admonition of the learned judge at its birth. It commingles these alleged slanders, diverse not only in time but in character, and compounds them more in the manner of the apothecary, than having the clear, orderly, and distinct averment of the *pleader*.

Judgment affirmed.